Robert J. De Groot, Esq.
60 Park Pl.
Newark, N.J. 07102
Attorney for Plaintiff
(973) 643-1930

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
---------------------------x
RUSSELL L. NYPE,           :
REVENUE PLUS, LLC.,        :   CIVIL ACTION
                           :
           Plaintiffs,     :   Case No.:
                           :
                           :   COMPLAINT
Vs.                        :
                           :
SAM K. SPITZ, CPA          :
SKE GROUP, LLC.,           :
                           :
           Defendants.     :
                           :
---------------------------x
```

RUSSELL L. NYPE, and REVENUE PLUS, LLC., ("COMPLAINT by and through their counsel, the Law Offices of Robert J. De Groot, Esq., hereby allege by way of Complaint, the following:

**THE PARTIES**

1. RUSSELL L. NYPE, (hereinafter "NYPE"), is an individual who resides at 400 S. Ocean Blvd., APT 423, in the Township of Palm Beach, in the State of Florida.

2. REVENUE PLUS, LLC.,(hereinafter "REVENUE PLUS") is an entity registered to conduct business in the State of Florida, with a primary business address of 400 S. Ocean Blvd., APT 423, in the Township of Palm Beach, in the State of Florida.

1

3. NYPE is the managing member of REVENUE PLUS, a business whose primary purpose is real estate investment (NYPE & REVENUE PLUS hereinafter collectively referred to as Plaintiff or NYPE).

4. SAM K. SPITZ (hereinafter "SPITZ") is a Certified Public Accountant who resides at Homestead Cir., in the Town of Marlboro, in the State of New Jersey.

5. SKE GROUP, LLC. (hereinafter "SKE GROUP") is a business entity specializing in providing accounting services with its main business address of 16 Village Court, Hazlet, N.J., 07730.

6. SPITZ is a principal of SKE GROUP and a certified public accountant in the State of New Jersey, must abide by rules and regulations promulgated by the New Jersey Division of Consumer Affairs and its State Board of Accountancy, including N.J.A.C. 13:29-3.2 (integrity and objectivity), mandating that accountants "shall not knowingly misrepresent facts."

### BASIS OF JURISDICTION

7. Jurisdiction in this matter is based on 28 U.S.C.A. 1332 or "Diversity Jurisdiction" as the parties reside and do business in different States and the claimed damages in this matter exceed seventy five thousand dollars ("$75,000").

## FACTS COMMON TO ALL COUNTS

8. Plaintiffs repeat the preceding allegations as if fully stated herein.

9. On or around 2005, David Mitchell and Barnett Liberman were members of various business entities including Las Vegas Land Partners, LLC. ("LVLP").

10. LVLP and various other entities controlled by Mitchell and Liberman owned an assemblage of five blocks in Downtown Las Vegas {hereinafter "Property."}

11. Mitchell and Lieberman met NYPE in 2005 and requested his assistance in finding an investor to assist in the development of the Property.

12. NYPE used his extensive contacts to assist LVLP and its principals in finding a partner to develop the property.

13. NYPE also had extensive experience in working on numerous, high density urban developments.

14. At first, NYPE identified Forrest City Enterprises ("FORREST") as a potential partner. NYPE was once employed as vice president of marketing for FORREST

15. In June 2006, LVLP and FORREST failed to reach an agreement on a joint venture to develop the Property.

16. LVLP then requested NYPE to use his contacts with FORREST to resuscitate the venture.

3

17. NYPE was able to resuscitate the venture and assisted LVLP in coming to terms with FORREST to develop the property.

18. LVLP specifically credited NYPE from the saving the transaction in August 2006 after FORREST almost decided to not enter into a partnership.

19. LVLP identified NYPE as its representative during the transactions with FORREST and on numerous occasions advised NYPE that it would compensate him for his important services for LVLP.

20. After LVLP and FORREST agreed to the terms of the venture, FORREST invested $101 million dollars into the project.

21. Of that amount, Liberman and Mitchell's entity LIVE WORK LLC., received 10.5 million dollars.

22. LVLP saved millions of dollars in interest payments on the project's existing loan financing.

23. Liberman and Mitchell were each relieved of $19,484,000 in personal guarantees on loan obligations.

24. NYPE'S actions were also instrumental in saving LVLP from the great recession of 2008.

25. LVLP, Mitchell and Liberman refused to compensate NYPE for his services.

26. In November 2007, LVLP and related entities filed a Complaint seeking declaratory judgment against NYPE relieving them of any obligations to compensate him for his services.

27. NYPE and REVENUE PLUS filed an Answer and Counterclaim in December 2007.

28. The Nevada District Court in Clark County rejected LVLP, Mitchell's and Liberman's argument and instead found in favor of NYPE on March 26, 2015.

29. The Court found that LVLP was unjustly enriched at the expense of NYPE and awarded NYPE a judgment in the amount of $2,608,797.50 (two million, six hundred eight thousand, seven hundred ninety seven dollars and fifty cents).

30. Paragraphs 9-29 of this Complaint consist of the findings made by the Nevada District Court in Clark county.

31. LVLP, Liberman and Mitchell filed an appeal which was mostly rejected by the Nevada Supreme Court. The Court did reduce the judgment in favor of NYPE by approximately $50,000, less for expert fees.

32. In 2016, the Judgment creditors filed an alter-ego and fraudulent transfer action in the Eighth Judicial District Court, Clark County, Nevada, Case No.: A-16-740689-B, against Las Vegas Land Partners, its principals David J. Mitchell, and Barnett Liberman, and various associated entities including Meyer Property, Ltd., Zoe Property, LLC., Leah Property, LLC., Wink One, LLC., Live Work, LLC., Live Work Manager, LLC., Aquariious Owner, LLC., LVLP Holdings, LLC., Mitchell Holdings, LLC>, Liberman Holdings, LLC., 305 Las Vegas LLC., Live Works

TIC Successor, LLC., FC/Live Work Vegas LLC., and Casino Coolidge, LLC.

33. As part of post judgment collection efforts, the Plaintiffs served a *subpoena ad testificandum* and *duces tecum* on SPITZ to appear on February 8, 2018 for a deposition and for a production of documents.

34. SPITZ and SKE and were the long-time accountants for LVLP and related entities.

35. The subpoena requested numerous documents including but not limited to tax records, billing records, book keeping records, receipts of income, money transfers, expense records, ledgers and engagement letters of judgment debtors and their alleged alter egos.

36. The Plaintiffs deposed SPITZ on March 5, 2018.

37. SPITZ continuously asserted during his deposition that with the exception of emails, he produced a complete and responsive set of documents to the subpoena duces tecum.

38. During the deposition, SPITZ was advised by Plaintiff's counsel that the "primary purpose of [the] deposition is to discover information… our primary purpose was to see what kind of records you had as to regards to your client Las Vegas Land Partners, LLC., as well as its various affiliates and assigns."

6

39. SPITZ also asserted during the deposition that his "engagement letters" with clients stated that he would only retain records for three years.

40. SPITZ asserted that his three year retention policy was in effect for approximately the last ten years.

41. SPITZ asserted that his policy was to have clients execute new engagement letters each year.

42. At the deposition, SPITZ asserted that he would not be providing data in its native format but that instead, he created PDF files of relevant documents and that he provided them.

43. On October 24, 2018, the Plaintiffs filed a motion with the Superior Court of New Jersey, Monmouth County, to enforce the subpoena, arguing that SPITZ and SKE did not fully comply with the subpoena.

44. During oral arguments on the motion, SPITZ produced additional documents, despite previously asserting that he had fully complied with the subpoena.

45. On December 5, 2018, the Court ordered SPITZ and SKE to produce electronic versions of all documents requested in the Subpoena, including, but not limited to, native, electronic versions of e-mails, Word documents, letters, QuickBooks files (or other similar accounting records), ledgers, worksheets, etc., that are in his (or his firm, SKE GROUP, LLC's) possession, custody or control.

46. The Court also ordered a search of SPITZ's and SKE's business servers/computers.

47. On January 15, 2019, the Plaintiffs filed a motion to enforce litigant's rights as SPITZ and SKE GROUP failed to comply with the court's order enforcing compliance with the subpoena.

48. While these motions were pending, the Plaintiffs had an action in Nevada against judgment debtors and their purported alter egos.

49. The documents requested in the subpoena and ordered to be produced by the court were relevant to the underlying action and the documents were relevant in determining whether the judgment debtors were moving their funds or concealing the funds to avoid collection.

50. On March 7, 2019, the Superior court granted the motion in part and ordered SPITZ to respond to a letter submitted by NYPE's counsel regarding the nature and character of his servers which were necessary to determine prior to determining collection methodology.

51. On May 8, 2019, the Plaintiffs filed a motion to enforce litigant's rights. In that motion, the Plaintiffs noted that Spitz produced numerous documents in hard copy format which he failed to provide in electronic/native format.

52. Numerous documents were also provided in native format were not provided in the initial hard copy production.

53. The Plaintiffs noted that SPITZ also failed to produce the native/ESI format of the engagement letters requested in the subpoena.

54. The Plaintiffs had alleged the engagement letters were drafted after their purported dates of execution so as to justify the purported destruction of relevant records.

55. The Plaintiffs once more requested the court's intervention because of SPITZ's actions to bar the Plaintiffs from inspecting the servers and only on insisting an "on site" inspection.

56. SPITZ also requested that he be provided with search terms before the server inspection, with the Plaintiffs being barred from examining any deletions or manipulation of native/ESI data.

57. On August 7, 2019, the court ordered SPITZ to allow an examination of the server consistent with the procedures requested by the Plaintiffs.

58. In support of the motion to enforce litigant's rights, the Plaintiffs produced a certification by Mark Rich, CPA, who concluded that SPITZ was not being forthright as he could not have prepared the various tax returns and other tax documents without the missing documents.

59. The missing documents included but were not limited to: (a) Electronic Worksheets, Quick Books files, Word documents, details of notes; (b) Details of notes receivables to related parties and how they were repaid; (c) Depreciation schedules for the period of 2007 to 2012; (d) Cost basis schedules for all parcels covering the period of 2007 to 2012; (e) Calculation of loan amoritizations for all loans; support for loand balances, including related party loans; (f) support for loan balances, including related party loans; (g) support for all journal entries made by the LVLP parties; (h) Capital Account detail for each LLC member; (i). Details of all sales and documents provided to Mr. Spitz to calculate gain/loss; (j) details of how each disregarded entity is included on the LVLP Holdings, LLC., tax return; (k) Wink One, LLC., FQ Las Vegas, LLC., FC/LW Vegas, LLC., and QH Las Vegas LLC., detailed accountings provided to Mr. Spitz; (l) Working Trial Balances that agree with the tax returns (2006 and 2007); (m) Working trial balances for all years; (n) supporting work papers that the LVLP parties gave SPITZ to prepare tax returns;

60. SPITZ's explanation that he did not retain the missing documents due to his firm's three year retention policy is not credible.

61. SPITZ did produce numerous documents helpful to his clients which were more than three years old.

10

62. SPITZ also failed to produce the native format/ESI for the engagement letters which he did produce and which conveniently describe his firm's three year retention period.

63. Plaintiffs' expert noted that the accounting records, or lack thereof, showed "ongoing spoliation" of critical accounting evidence covering a period of several years, resulting in the destruction of records from 2005-2012.

64. This is the same time frame where Liberman, Mitchell and the related entities received millions of dollars from the transaction NYPE helped orchestrate.

65. On or about January 17, 2020 the District Court of Nevada in Clark County ruled in favor of NYPE and REVENUE and against the judgment debtors and affiliated entities.

66. The court found that despite knowing they had an obligation of approximately two million dollars to NYPE, Liberman and Mitchell took personal distributions for themselves in excess of 13 million dollars.

67. The court found that between 2007 and 2016, Mitchell and Liberman disbursed over $15 million ($15,000,000) to themselves from LVLP, despite knowing of NYPE's claims.

68. The court concluded that Liberman, Mitchell and associated entities engaged in "conscious, concerted and ongoing efforts to conceal, hide, convey keep secret and/or divert

11

millions of dollars in assets away from NYPE and/or other creditors."

69. The court concluded that "the evidence also demonstrates that Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to NYPE to satisfy his claims (and Judgment) were kept away from NYPE."

70. The Court concluded that the Defendant entities, with the exception of Mitchell Holdings, were in fact the alter egos of LVLP, Mitchell and Liberman.

71. The court concluded that Mitchell "fabricated and backdated evidence to facilitate the destruction and/or concealment of material finance evidence by his agent that would have greatly assisted NYPE'S case."

72. The court concluded that the engagement letters provided by SPITZ were fraudulent.

73. The court found that the Plaintiffs were entitled to special damages in the amount of $4,493,176.90 for fees, costs and expenses.

74. The court found that the Plaintiffs were entitled to damages in the amount of $341,934.47, resulting from a fraudulent transfer involving Liberman and Mitchell.

75. The court found that the Plaintiffs were entitled to damages in the amount of $15,148,339 as a result of a civil conspiracy between Liberman and Mitchell.

76. In total, the court awarded NYPE $19,641,515.90 in damages.

77. SPITZ's actions to destroy and conceal various financial documents showing the sources, disposition, disbursement and transfers of at least $15,000,000 of monies between Liberman, Mitchell and related entities resulted in NYPE'S inability to locate funds to satisfy judgments entered against them.

78. As a result of SPITZ's actions to conspired with and participate in Liberman and Mitchell's fraudulent scheme, which were both in violation of his ethical duties and against the New Jersey proscription against concealing and destroying evidence, the Plaintiff sustained damages including but not limited to attorney and expert fees, costs, expenses, and the inability to find/locate at least fifteen million dollars to satisfy the various judgments in this matter.

## COUNT I- Spoliation

79. Plaintiffs repeat and reallege the preceding paragraphs as if fully plead herein.

80. SPITZ and SKE had a legal obligation to draft SPITZ's and SKE's financial documents based on complete and accurate information.

81. Spitz and SKE had a legal duty to maintain and preserve source documentation, working papers, and financial documents based on prudent retention policies, customary for professional accountants.

82. Spitz and SKE actually set forth in their public website guidelines for records retention.

83. SPITZ and SKE had a legal duty to produce these documents in response to a subpoena served upon them by the Plaintiffs.

84. Substantial consequential damages to third parties such as the Plaintiffs were the reasonable and foreseeable result of SPITZ and SKE's negligent and/or intentional spoliation of financial records.

85. SPITZ and SKE failed to produce these records in response to the subpoena, and lost, destroyed, or affirmatively concealed documents which would have shown the disposition, disbursement and transfer of funds by and between Liberman, Mitchell and related entities.

14

86. This information was necessary to satisfy the Plaintiffs' judgments.

87. The Plaintiffs are unable to recover on their judgments due to SPITZ's and SKE'S loss and/or destruction of material financial records.

88. SPITZ's and SKE's intentional and/or negligent conduct had the effect of shielding the disposition of at least fifteen million dollars of monies transferred by and between Liberman, Mitchell and related entities.

89. The Plaintiffs have been proximately damaged by SPITZ's intentional and /or negligent conduct in at least the amount of the judgments obtained against Liberman, Mitchell and related documents.

WHEREFORE, the Plaintiffs demand Judgment and the award of Compensatory damages, punitive damages, attorney fees, expert fees, costs.

## COUNT II- CIVIL CONSPIRACY

90. Plaintiffs repeat and re-allege the preceding paragraphs as if fully plead herein.

91. SPITZ and SKE acted in concert with various individuals and business entities to both withhold and conceal various documents from the Plaintiffs which were necessary to examine for the purposes of finding sources to satisfy the judgment in the underlying Nevada manner.

92. SPITZ and SKE acted in concert with various individuals and business entities to fraudulently transfer funds from the judgment debtors on the underlying Nevada manner to other entities.

93. SPITZ and SKE are liable to the Plaintiffs for the fraudulent transfer or the hiding assets for purposes of defeating legal process and are liable for damages and counsel fees in the amounts of the various Nevada judgments.

WHEREFORE, the Plaintiffs demand Judgment and the award of Compensatory damages, punitive damages, attorney fees, expert fees, costs.

## COUNT III- NEGLIGENCE

94. The Plaintiffs repeat and reallege the preceding paragraphs as if fully stated herein.

95. SPITZ and SKE were retained to perform accounting services for LIBERMAN, MITCHELL and various affiliated entities in various years including years where there was pending litigation, including counterclaims, filed by the Plaintiffs, and subsequently after the Plaintiffs had already obtained judgments against LIBERMAN and MITCHELL's wholly owned entity, LVLP.

96. SPITZ and SKE knew or reasonably should have known that the Plaintiffs or others similarly situated would depend on

the accounting services it performed for the Defendants, judgment debtors and related entities.

97. SPITZ and SKE had a duty to the Plaintiffs, their clients and the public, to conduct the various accounting services for the judgment debtors and related entities in a reasonable and professional manner.

98. SPITZ and SKE had a duty to the Plaintiffs, their clients and the public to maintain and preserve source documentation, working papers and work product in accordance with commonly known and customary (for professional accountants) objective standards for records retention, as shown, e.g. on SPITZ's and SKE's website.

99. SPITZ and SKE had a duty to the Plaintiff to maintain accurate records related to the accounting services for the judgment debtors and related entities in a reasonable and professional manner.

100. SPITZ and SKE breached these duties and proximately caused the Plaintiffs to sustain damages.

WHEREFORE, the Plaintiffs demand Judgment and the award of Compensatory damages, punitive damages, attorney fees, expert fees, costs.

**NEGLIGENCE PER SE**

101. Plaintiffs repeat and reallege the preceding paragraphs as if fully stated herein.

102. The State of New Jersey promulgated rules, regulations and statutes for accountants which are designed to protect the public.

103. Pursuant to the Accountancy Act of 1997, the State's Legislature has declared a policy to "promote the reliability of information that is used for guidance in financial transactions or for accounting for or assessing the financial status or performance of commercial, noncommercial, and governmental Enterprises." N.J.S.A. 45:2B-43.

104. The State's accounting regulations set forth that: "A licensee or the licensee's firm shall not undertake any engagement for the performance of professional services which the licensee cannot reasonably expect to complete with due professional competence, including compliance…" N.J.A.C. 13:29-3.3.

105. The State's accounting regulations also require objectivity, independence and competence. N.J.A.C. 13:29-3.1.

106. Accountants are also required to abide by Generally Accepted Accounting Principles.

107. SPITZ and SKE breached these duties to the Plaintiffs by failing to maintain and preserve source documentation, working papers and work product in accordance with commonly known and customary (for professional accountants) objective standards for records retention).

108. SPITZ and SKE's negligence per se in this regard proximately caused damages to the Plaintiffs and caused them to sustain damages.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all the issues in this matter.

By: Robert J. De Groot, Esq.

Date: September 30, 2020

### DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Robert J. De Groot, Esq., as trial counsel in the within matter.

By: Robert De Groot, Esq.

Date: September 30, 2020