Robert J. De Groot, Esq.
60 Park Pl.
Newark, N.J. 07102
Attorney for Plaintiff
(973) 643-1930

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
------------------------x
RUSSELL L. NYPE,            :
REVENUE PLUS, LLC.,         :    CIVIL ACTION
                            :
            Plaintiffs,     :    Case No.: 3:20-cv-13680-MAS-TJB
                            :
                            :
Vs.                         :
                            :
SAM K. SPITZ, CPA           :
SKE GROUP, LLC.,            :
                            :
            Defendants.     :
                            :
------------------------x
```

---------------------------------------------------------------
PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION FOR
DIMISSAL PURSUANT TO FED. R. CIV. PROC. 12 (b) (6)
---------------------------------------------------------------

Robert J. Degroot, Esq.
Counsel of Record
Oleg Nekritin, Esq.
Counsel on the Brief

**TABLE OF CONTENTS**

Table of Authorities                                           i.


Preliminary Statement and Statement of Facts…………………………………… 1


I. LEGAL ARGUMENT

The Court must deny the Defendants'
motion to dismiss the spoliation cause of action.
Contrary to the Defendants' assertion, New Jersey does
recognize spoliation as an independent
cause of action…………………………………………………………………………………… 7


II. LEGAL ARGUMENT

The Court must deny the Defendants' motion to dismiss the
negligence counts. The Defendants knew that the
Plaintiffs/judgments creditors would review and rely
upon the information contained in the various financial
documents Spitz drafted for the judgment debtors
as part of their collection efforts……………………………………………………… 12


III. LEGAL ARGUMENT

Defendants fail to establish that this action
is barred under the doctrine of claim preclusion………………………… 18


IV. LEGAL ARGUMENT

The "Entire Controversy Doctrine" does not apply
to bar this litigation because the proceeding in
Monmouth County was only an ancillary proceeding
to the Nevada matter, used to obtain discovery
from an out-of-State witness………………………………………………………………… 27


V. Legal Argument

The Plaintiffs sufficiently plead the
elements of a civil conspiracy……………………………………………………………… 29

VI. LEGAL ARGUMENT

The Plaintiffs sufficiently plead a negligence per se
cause of action based on State regulations and
statutes applicable to accountants...................................................................... 34


CONCLUSION................................................................................................................. 36

## Table of Authorities

Table of Cases

Adie v. Stewart,
    2020 U.S. Dist. LEXIS 239506 (D.N.J. 2020)    30

Alcantara v. Wal-Mart Stores, Inc.,
    130 Nev. 252 (2014).    21

Altair Corp. v. Grand Premier Trust & Inv.,
    318 Ill. App. 3d 57 (2000).    26

Ashcroft v. Iqbal, 556 U.S. 662,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).    31

Bell Atl. Corp. v. Twombly,
    550 U.S. 544,
    127 S. Ct. 1955,
    167 L. Ed. 2d 929 (2007)    30

Bower v. Harrah's Laughlin, Inc.,
    125 Nev. 470 (Nev. 2009).    21

Cast Art Industries, LLC. V. KPMG LLP.,    14
    209 N.J. 208 (2012).

Davis v. Wells Fargo, 824 F.3d 333
    (3d Cir. 2016).    15

Dimitrakopoulos v. Borrus, Goldin, Foley,
Vignuolo, Hyman and Stahl, P.C.,
    237 N.J. 91 (2019).        28

E. Dickerson & Son, Inc. v. Ernst & Young, LLP,
    179 N.J. 500 (2004).        13

Eli Lilly and Co. v. Roussel Corp.,
    23 F. Supp. 2d 460 (D.N.J. 1998).        31

Farris v. County of Camden,
    61 F. Supp. 2d 307 (D.N.J. 1999).        31

Foglia v. Renal Ventures Mgmt., LLC,
    754 F.3d 153 (3d Cir. 2014).        15

Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972).    26

G.C. Wallace, Inc. v. Eighth Judicial Dist. Court,
    127 Nev. 701 (2011).        19

Gilleski v. Cmty. Med. Ctr.
    336 N.J. Super. 646 (App. Div. 2001)        8

H. Rosenblum, Inc. v. Adler, 93 N.J. 324 (1983).    12

Hirsch v. General Motors Corp.,
    266 N.J. Super. 222 (Law Div. 1993)        7,8

Hewitt v. Allen Canning Co.,
    321 N.J. Super. 178  (App. Div. 1999)        8

Highland Lakes Country Club & Cmty. Ass'n v.  Nicastro,
    201 N.J. 123 (2009).        28

Howard v. City of Coos Bay,
    871 F.3d 1032 (9th Cir. 2017).              25

Kremer v. Chem. Constr. Corp.,
    456 U.S. 461 (1982).              26

Loveland Essential Grp., Ltd. Liab. Co. v.
    Grommon Farms, Inc.,
    2012 COA 22.              25

Media Rights Techs., Inc. v. Microsoft Corp.,
    922 F.3d 1014 (9th Cir. App. 2019).              25

Mendenhall v. Tassinari, 403 P.3d 364, 371 (Nev. 2017).    25

Mest v. Cabot Corp., 449 F. 3d 503 (3d Cir. 2006).    33

Morgan v. Covington Twp., 648 F.3d 172 (3d Cir. 2011).    25

New York-Connecticut Development Corp. v.
Blinds-To-Go (U.S.) Inc.,
    449 N.J. 542 (2017).              8

Paradise Palms Cmty. Ass'n v. Paradise Homes,
    89 Nev. 27 (1973).              21, 23

Phillips v. Cnty. Of Allegheny,
    515 F.3d 224 (3d Cir. 2008).              32

State, Dep't of Treasury, Div. of Inv.
ex rel. McCormac v.
Qwest Communications Intern., Inc.,
      387 N.J. Super. 469 (App. Div. 2006),                    8


Weddell v. Sharp, 131 Nev. 233 (2015).


Yapp v. Excel Corp.,
      186 F.3d 1222 (10th Cir. App. 1999).                    26

Table of Statutes, Regulations and Rules

Fed. R. Civ. Proc. 8                                           9
N.J.S.A. 2A:53-25                                          11,12
N.J.S.A. 45:2B-43                                             34
N.J.A.C. 13:29-3.1.                                           34
N.J.A.C. 13:29-3.5                                           34

## PRELIMINARY STATEMENT AND STATE OF FACTS

Russell Nype ("Nype" or "Plaintiffs when referred together with Revenue Plus) dedicated years of his life to enable David Mitchell ("Mitchell") and Barnett Liberman ("Liberman"), principals of Las Vegas Land Partners ("LVLP"), to achieve great wealth by finding an investment partner with the necessary capital to facilitate their dream of developing dozens of parcels of property they acquired in downtown Las Vegas, Clark County, Nevada. Nype ultimately was successful in finding, and helping LVLP close a deal with, a nationally recognized, deep-pocket development partner which infused over $100 million ($100,000,000) into the downtown development project.

In turn, for the next twelve years, Liberman and Mitchell resorted to both judicial process and a complex scheme of creating alter egos and shell companies to avoid compensating Nype for his services and to obstruct Plaintiffs' judgment collection efforts. First, Liberman and Mitchell instituted legal proceedings to declare that they had no obligation to compensate the Plaintiffs. They argued that because Nype did not have a real estate license, he was not entitled to compensation for his services in finding the necessary partner to inject LVLP with capital.

1

On March 26, 2015, the Nevada District Court in Clark County, Nevada, rejected Mitchell's and Liberman's attempts to receive the benefit of Nype's services without compensating him. The Court found that LVLP was unjustly enriched and awarded NYPE damages in the amount of $2,608,797.50 (the "1st Judgment") (See Exhibit 11, ¶29).

Instead of satisfying the judgment, Liberman and Mitchell's plans B, C and D were to use numerous alter ego and shell companies to frustrate Plaintiffs from recovering on the judgment, whose efforts have been ongoing since the inception of that first litigation in 2007.

After 1st Judgment discovery on LVLP revealed that Mitchell and Liberman had left it an empty shell, the Plaintiffs filed an alter ego/fraudulent-transfer/civil-conspiracy action against the judgment debtor, LVLP, and Mitchell, Liberman and certain of their entities associated with LVLP in 2016. At the time of the action's filing, Plaintiffs did not have any knowledge of wrongdoing on the part of the present Defendants, Spitz and SKE Group, Inc., who were the accountants for LVLP, Mitchell and many of their alter egos.

As part of their collection efforts on the 1st Judgment, including Plaintiffs' new lawsuit to pierce the corporate veil of the alter egos situated in Nevada, Plaintiffs' counsel served

2

a subpoena upon Spitz on January 22, 2018, requiring him to sit
for a deposition and to produce various financial records
pursuant to New Jersey Rule 4:11-4. As the accountant for the
judgment debtor and most of their alter egos, Spitz would have
prepared the financial documents which would show where LVLP and
its principals had directed their assets to shield them from
exposure or execution.

In response to the subpoena, Spitz failed to provide
data, i.e. native-electronic versions of documents and masses of
documents that should have existed (the subpoena called for meta
data or native-electronic files) and explained his failure to
provide the seemingly missing documents by citing to a purported
three year document retention policy for records, which he said
had been in effect for ten years (See Exhibit 11, ¶39-40). To
support the purported three-year retention policy, Spitz
produced engagement letters (but not in native electronic
format) which were ultimately discovered, but not until
November 19, 2019, to have been backdated and created for the
purpose of deceiving the Plaintiff and justifying the absence
and non-production of meaningful accounting documents from the
most relevant years (See Muije Declaration ¶46 and Exhibit 10).[1]

---

[1] "Plaintiffs cite to material outside of the four corners of the Complaint due
to the Defendant arguing that the entire controversy doctrine and preclusion
bars this action.  The argument necessitates discussion about the procedural
history and discovery timeline of the Nevada matter."

Throughout the middle and late 2018, the Plaintiffs filed numerous motions in the Superior Court of New Jersey aimed at having Spitz comply with the original subpoena and compelling him to produce meta data, native electronic files and the believed-to-be missing documents related to the Nevada matter (See Exhibits 2, 3 and 5 and Muije Declaration ¶23-28). The Plaintiffs were only able to obtain a copy  of relevant documents in Spitz's possession on December 12, 2019, after the Superior court of New Jersey permitted the Plaintiffs to clone Spitz's work computers/hard drives (Muije Declaration, ¶48).

Such cloning did not, however, provide actual immediate access to the documents due to "safe guards" in the New Jersey Superior Court order. Around the same time, on or about November 4, 2019, after months of motion practice in Nevada, Plaintiffs were finally able to obtain from Mitchell millions of pages of previously withheld discovery (including emails among Mitchell and Spitz) (Muije Declaration, ¶43).  From this discovery, on November 19, 2019, Plaintiffs for the first-time discovered evidence that Defendants had conspired with Mitchell, et al., in 2018 to fabricate and backdate the fee agreement that Defendants had relied onto justify why they lacked so many accounting records (and native electronic files) that should have existed and been produced (Muije Declaration, ¶46).

4

With that evidence, it then became apparent that there was a pattern of "ongoing spoliation" by Defendants of critical accounting evidence covering crucial time periods, which resulted in the destruction and/or concealment of records from 2005-2012, not coincidentally the same time frame where Liberman, Mitchell and the related entities received and personally pocketed over ten million dollars that development partner Nype brought to them. In other words, Spitz was acting to prevent tracing of such funds by both failing to disclose records which would reveal their disposition, fabricating fee agreements and by also creating financial records based on false information. Unfortunately, Plaintiffs were unable to discover evidence sufficient to assert claims against Defendants in the Nevada matter until it was far too late. Trial in that matter started on December 30, 2019 and the case had been heavily litigated for over three years at that point. Discovery had long since closed and the deadline to amend pleadings or add parties had long since passed. The judge had also made it clear around that exact same time that the case had gone on far too long and she would not permit anything to delay trial from starting in December 2019.

In January, 2020, the court found almost entirely in Nype's favor, holding Mitchell, LVLP and numerous other entities liable as alter egos and awarding Nype more than $20,000,000 as a

remedy for Mitchell and Liberman's fraudulent transfers and civil conspiracy to harm Nype.

Thereafter, Plaintiffs filed this action to recover damages associated with the Defendants' actions to conceal and hide evidence regarding LLVP, its principals, and alter egos' assets, necessary to satisfy the Plaintiffs' judgment. Despite Spitz ignoring his professional duties to maintain and preserve source documentation, working papers, and financial documents based on prudent retention policies (in fact encouraged on his website) customary for professional accountants, he cites to the New Jersey Accountant's Liability Act and the "entire controversy doctrine" to shield him from liability against claims of both negligence and intentional misconduct.

An examination of both the Act and the entire controversy doctrine shows that neither bars Plaintiffs from proceeding herein. First, the entire controversy doctrine does not apply because the Plaintiffs never instituted an action against the Defendants in the State of New Jersey. Instead, they sought to enforce an out of State subpoena pursuant to Rule 4:11-4. This was simply an ancillary discovery proceeding and not a claim for damages. The entire controversy doctrine applies only when a party had already instituted claims in the State from which the facts in the subsequent case arose, e.g., common nuclei.

The Act also does not apply to bar this action. Case law specifically states that the Act does not bar causes of action against accountants based on intentional acts. Furthermore, as described below, Spitz was aware that his work product would be used by and relied by the Plaintiffs.

Finally, the Plaintiffs also adequately plead a claim that Defendants committed the tort of civil conspiracy when they conspired with LVLP and its principals to hide evidence regarding their assets  by fabricating and refusing to produce financial documents. Alternatively, the Defendants' actions are "negligence per se" as they violate numerous regulations and the Act by abandoning any indicia of the accountant's independence, objectivity and competence.

## I. LEGAL ARGUMENT

**The Court must deny the Defendants' motion to dismiss the spoliation cause of action. Contrary to the Defendants' assertion, New Jersey does recognize spoliation as an independent cause of action.**

The Defendants incorrectly assert that spoliation is not an independent cause of action in the State of New Jersey. The Defendants cite to Hirsch v. General Motors Corp., 266 N.J. Super., 222, 246 (Law Div. 1993) in support of their argument. However, the Defendants cite to a portion of the case which actually states that New Jersey does recognize a spoliation

cause of action so long as the spoliation is intentional. "New Jersey recognizes fraudulent concealment of evidence as an independent tort. However, New Jersey does not recognize a separate tort for negligent spoliation." Id. (emphasis added) .

Likewise, in State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc., 387 N.J. Super. 469, 480 (App. Div. 2006), the court held that the Act does not shield an accountant from liability based on intentional acts of fraud or assisting a client in committing fraud.

Moreover, cases decided after Hirsch in the Appellate Division, do indeed permit the Plaintiff to plead an independent cause of action based on negligent spoliation of evidence. Gilleski v. Cmty. Med. Ctr. 336 N.J. Super. 646, 654-655 (App. Div. 2001); Hewitt v. Allen Canning Co., 321 N.J. Super. 178, 183-184 (App. Div. 1999). A negligence cause of action is also recognized by the New Jersey Law Journal's publication, John J. Bannan, Encyclopedia of N.J. Causes of Action, at 207 (2013).

The Plaintiffs in the within matter have plead alternative theories of spoliation based on both negligent and intentional conduct. This is permissible under the Federal Rules of Civil Procedure, which allow Plaintiffs to plead causes of action based on alternative theories of recovery, even if they are inconsistent. See Fed. R. Civ. Proc. 8 (d); New York-Connecticut

8

Development Corp. v. Blinds-To-Go (U.S.) Inc., 449 N.J. 542, 557 (2017).

The Defendants' argument that any spoliation cause of action is precluded by the New Jersey Accountant's Liability Act ("Act"), ignores that a spoliation cause of action applies to an individual's concealment, or destruction, fabrication or alteration of evidence relevant to a litigation, while the Act applies to transactions between a client and claimant during their relationship. The Act governs malpractice actions. Spoliation, on the other hand, is a cause of action reserved to provide a remedy for the harm caused by a party's failure to preserve and produce evidentiary material, or fabricating or altering evidence, knowing that a litigation exists or is probable.

In this matter, the Plaintiffs allege that the Defendants either intentionally or negligently concealed evidentiary documents.  Paragraphs 84-85 of the Complaint assert that:

> … Substantial consequential damages to third parties such as the Plaintiffs were the reasonable and foreseeable result of SPITZ and SKE's negligent and/or intentional spoliation of financial records.
>
> 85. SPITZ and SKE failed to produce these records in response to the subpoena, and lost, destroyed, or affirmatively  concealed documents which would have shown the disposition, disbursement and transfer of funds by and between Liberman, Mitchell and related entities.

9

(See Exhibit 11, ¶ 84-85.

The Plaintiffs argue that "Spitz and SKE had a legal duty to maintain and preserve source documentation, working papers, and financial documents based on prudent retention policies, customary for professional accountants." (See Exhibit 11, ¶ 81. The various documents included but were not limited to:

> The missing documents included but were not limited to: (a) Electronic Worksheets, Quick Books files, Word documents, details of notes; (b) Details of notes receivables to related parties and how they were repaid; (c) Depreciation schedules for the period of 2007 to 2012; (d) Cost basis schedules for all parcels covering the period of 2007 to 2012; (e) Calculation of loan amoritizations for all loans; support for loan balances, including related party loans; (f) support for loan balances, including related party loans; (g) support for all journal entries made by the LVLP parties; (h) Capital Account detail for each LLC member; (i). Details of all sales and documents provided to Mr. Spitz to calculate gain/loss; (j) details of how each disregarded entity is included on the LVLP Holdings, LLC., tax return; (k) Wink One, LLC., FQ Las Vegas, LLC., FC/LW Vegas, LLC., and QH Las Vegas LLC., detailed accountings provided to Mr. Spitz; (l) Working Trial Balances that agree with the tax returns (2006 and 2007); (m) Working trial balances for all years; (n) supporting work papers that the LVLP parties gave SPITZ to prepare tax returns.

(See Complaint, ¶ 59).

The Plaintiffs sufficiently allege that the Defendants' failure to produce documents (which were necessary to draft for the purposes of creating and submitting various financial documents), is the result of spoliation of records, either

intentional or negligent. These records either exist or existed and the Defendants prepared them with knowledge of an ongoing litigation. Defendants' failure to turn-over the records or to maintain the records during the pendency of the litigation is spoliation or concealment of evidence.

Finally, the Defendants' actions to fabricate fee agreements during the pendency of the litigation—in direct response to a litigation subpoena, which contained provisions limiting record retention to three years, is also spoliation under New Jersey law. The acts were intended to deceive the Plaintiffs and to obstruct them from obtaining material evidence. The acts attempted to conceal relevant and material evidence pertinent to the Plaintiffs' alter ego/fraud and collections matters.[2] The allegations that the Defendants committed these acts satisfies the requirements of a spoliation cause of action.

---

[2] See Muije Exhibit 10 for the communication from Spitz to Mitchell which resulted in the creation of fabricated engagement letters.

## II. LEGAL ARGUMENT

**The Court must deny the Defendants' motion to dismiss the negligence counts. The Defendants knew that the Plaintiffs/judgments creditors would review and rely upon the information contained in the various financial documents Spitz drafted for the judgment debtors as part of their collection efforts.**

The New Jersey Accountant's Liability Act (the "Act") or N.J.S.A. 2A:53-25, permits a non-client third party to recover damages against an accountant for negligence in performing services. Admittedly, the Act is more restrictive than accountant liability law prior to its enactment, which permitted "reasonably foreseeable claimants" to file negligence actions against accountants. H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 339 (1983).

The Act does not limit an accountant's liability to a non-client if the accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;
>
> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
>
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

N.J.S.A. 2A:53-25 (b).

The Act defines a 'Specified transaction' as a particular transaction between a client and a claimant. <u>N.J.S.A.</u> 2A:53-25 (a) (5).

The legislative history for Senate Bill 826, which eventually formed the basis for the Act, shows the Bill's sponsors were concerned about lawsuits by "virtually any member of the investing public."

> Thus, an accountant providing professional services to a client is vulnerable to lawsuits by virtually any member of the investing public at large, regardless of whether the accountant had any previous relationship with that person or any knowledge that the person would rely on the services the accountant rendered. The sponsor believes that this situation is particularly unjust in light of the fact that an accountant is rarely the primary wrongdoer in negligence cases. Instead, the accountant is sued because he failed to detect the fraud of his client. In many cases, an accounting firm is sued because it has "deep pockets," in contrast to its client, which may have become insolvent by the time the investors realize they have been defrauded.

A review of caselaw since the enactment of Act shows that most cases, like the ones cited by the Defendant, involve allegations of negligence in auditor services. In <u>E. Dickerson & Son, Inc. v. Ernst & Young, LLP</u>, 179 N.J. 500, 505 (2004), the New Jersey Supreme Court affirmed the trial court's dismissal of a stockholder action against an accounting firm. The stockholders alleged that the firm committed negligence by

failing to discover that the director of the firm's client committed various frauds.

In affirming the trial court's and appellate court's decisions, the New Jersey Supreme Court held that there was

> no special status which plaintiffs achieved by reason of their announced cooperative purpose that could distinguish them from the individual shareholders of an accountant's corporate client. They are still required to meet the qualifying conditions of <u>N.J.S.A</u>. 2A:53A-25, notwithstanding their collective endeavor to enhance their market position. We conclude that the plaintiff corporations were not the 'clients' of defendant Ernst & Young within the statutory definition, i.e. '[parties] directly engaging an accountant to perform a professional accounting service.' <u>N.J.S.A</u>. 2A:53A-25(a)(3).

<u>Id</u>. at 505.

Likewise, in <u>Cast Art Industries, LLC. V. KPMG LLP</u>., 209 N.J. 208 (2012), the Plaintiffs, who were non-client third parties, filed an action against KPMG, who was hired to conduct an audit of its business.  The New Jersey Supreme Court held that the Plaintiff could not sustain an action against the Defendant auditor because the auditor was not aware at the time of its engagement that its work would be relied upon by the Plaintiff, nor did it thereafter agree to have the Plaintiff to rely upon its work product.[3]

---

[3] Of note, in <u>Cast Art Industries</u>, the parties were permitted to conduct discovery for the purposes of ascertaining whether there was any knowledge on the part of the accountant, at the time of engagement or thereafter, that a third party would be provided access to the product of its services and that same third party would rely on the product of those services.

The present matter is atypical and distinguishable from the cases cited by the Defendants. The cases cited by the Defendants involved conduct occurring before the commencement of any litigation against the accountant's client. It is the ongoing litigation and specter of future lawsuits, which create the circumstances for Defendants' liability under the Act.

In this matter, Liberman and Mitchell retained the Defendants to perform accounting services for LVLP and related entities at the commencement of their action against Nype in 2007. They continued to use the Defendants for various accounting services on behalf of LVLP and numerous corporate alter egos throughout the first action and even subsequent to judgment in the 2007 case and during Nype's ensuing collection efforts.

Under a 12 (b) (6) motion, the court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016); Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

Thus, it can, and must be inferred under a Rule 12 (b) (6) motion, that the Defendant, who drafted the financials documents for these various judgment debtor companies and alter egos,

during litigation, would have knowledge that the Plaintiffs/judgment creditors would rely on his services in examining the paper trail related to the transfer and disposition of millions of dollars subject to collection.

Further, Spitz's actions to fabricate and backdate engagement agreements, his false assertions about his claimed short retention policy (i.e. three years), his refusal to produce the native format of electronically stored information, his selective production of subpoenaed documents, and his vigorous litigation efforts, were all in direct response to a subpoena issued by Plaintiffs and further demonstrates that Defendants were actively aware of the lawsuits instituted by the Plaintiffs, who would obviously depend on his work product as a professional licensed CPA subject to accounting standards and ethical rules, to avoid having to "follow the money."

At the very least, Plaintiffs should be permitted to pursue discovery related to Spitz's knowledge regarding reliance on his work product. The extensive history of a professional and personal relationship between Spitz, Mitchell, LVLP and the other judgment debtors, as well as Spitz's efforts to shield evidence regarding the disposition of their monies and assets, implies that he was specifically aware that the Plaintiffs would be examining and relying upon his work product.

The Defendants also argue that the Plaintiffs allege "no merger, acquisition, contract for sale of goods, property, or shares, nor any other agreement or action between the entities constituting a 'transaction.' Plaintiffs fail to plead any involvement with Defendants' preparation of tax returns for LVLP or Mitchell and thus fail to plead with specificity a 'specified transaction' made by Plaintiffs." (See Mot. Dismiss, Page 12).

However, due to the nature of the Defendants' involvement with all aspects of preparing financial paperwork for the judgment debtors and alter egos, it is impossible to just limit the pleading to just one transaction. The transactions were countless and the pleadings referenced just some of the many transactions in Paragraph 59 of the Complaint, e.g.:

> (a) Electronic Worksheets, Quick Books files, Word documents, details of notes; (b) Details of notes receivables to related parties and how they were repaid; (c) Depreciation schedules for the period of 2007 to 2012; (d) Cost basis schedules for all parcels covering the period of 2007 to 2012; (e) Calculation of loan amoritizations for all loans; support for loand balances, including related party loans; (f) support for loan balances, including related party loans; (g) support for all journal entries made by the LVLP parties; (h) Capital Account detail for each LLC member; (i). Details of all sales and documents provided to Mr. Spitz to calculate gain/loss; (j) details of how each disregarded entity is included on the LVLP Holdings, LLC., tax return; (k) Wink One, LLC., FQ Las Vegas, LLC., FC/LW Vegas, LLC., and QH Las Vegas LLC., detailed accountings provided to Mr. Spitz; (l) Working Trial Balances that agree with the tax returns (2006 and 2007); (m) Working trial balances for all years; (n) supporting work papers

See Exhibit 11, ¶ 59.

The Defendants' argument that tax returns may not be considered "transactions" because they "are not intended to be provided to entities other than the IRS…" ignores the alter-ego collection effort. The tax returns would be the amongst the first documents that a judgment creditor would demand. The Defendants' assertion is based on the premise that Spitz had no knowledge of the ongoing litigation. As the accountant for the various entities and principals throughout the course of both litigations, the Defendants always knew that the tax returns he drafted would be requested and depended on by the various judgment creditors. Spitz's recently discovered actions in 2018 to backdate agreements and conceal relevant evidence provide the necessary inference of knowledge regarding Plaintiffs' reliance on the examination of his records.

### III. Legal Argument

**Defendants fail to establish that this action is barred under the doctrine of claim preclusion.**

"A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. Section 1738, and must give a prior state judgment the same effect as would the adjudicating state." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).  Courts in the Third Circuit "look primarily to

th[e] state's law on preclusion [that issued the first judgment]." Id.

As it is undisputed that the subject judgment was issued by a Nevada state court, this Court should "look primarily" to Nevada preclusion law.

Under current Nevada law,

> for claim preclusion to apply, a defendant must demonstrate that (1) there has been a valid, final judgment in a previous action; (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first action; and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so.

Weddell v. Sharp, 131 Nev. 233, 235, 350 P.3d 80, 81 (2015)(fifth emphasis in the original). Nevada recognizes "numerous exceptions to the doctrine of claim preclusion." G.C. Wallace, Inc. v. Eighth Judicial Dist. Court, 127 Nev. 701, 707, 262 P.3d 1135, 1139 (2011)(emphasis added). Importantly, Nevada law recognizes that, "generally, a party need not assert every conceivable claim against every conceivable defendant in a single action." Weddell, 131 Nev. at 238, 350 P.3d at 83.

This Court should refuse to apply claim preclusion to bar this action because: (1) Defendants fail to establish that this action is based on the same claims or any part of them that were

or could have been brought in the first action; and (2) Defendants lack privity with the parties to the prior action and Plaintiffs could not practically have sued the Defendants in that prior action.

In determining whether a subsequent action is based on the same claims or any part of them that were or could have been brought in the first action, Nevada law considers whether the subsequent action "is based on the same set of facts and circumstances as the first suit[.]" Five Star Capital Corp., 124 Nev. at 1055, 194 P.3d at 714.

Defendants fundamentally misunderstand and mischaracterize the nature of the first action and the present action to create the impression that the two actions present the same claims.  In the first action, Nype sued to: (1) address certain fraudulent transfers; (2) hold Mitchell, Liberman and certain related entities liable as the alter egos of LVLP, and each other; and (3) hold Mitchell and Liberman liable in a civil conspiracy to commit fraudulent transfers and to operate and structure their entities and business dealings to remove and shield assets from Nype's ability to collect on them. In the present action, however, Nype sues Defendants for conspiring with Mitchell and Liberman to: (1) fabricate misleading financial statements; (2) hide, destroy or fail to disclose evidence; and (3) alter and/or

fabricate evidence.  The present action does not allege alter ego or fraudulent transfers.  It is about the hiding, altering, fabricating and/or failure to disclose financial documents and evidence and not about the structuring and/or use of numerous entities to shield assets from Nype. Accordingly, claim preclusion does not bar this action because it is not "based on the same set of facts and circumstances as the first suit[.]" Id., 124 Nev. at 1055, 194 P.3d at 714. Contrary to Defendants' assertion, this action does not "allege the exact same conspiracy" alleged in the prior action (Mot. Dismiss at 24).

Defendants assert that they "are in privity with LVLP, Mitchell and Liberman because Defendants were their accountants." (Mot. Dismiss at 19.).  Defendants cite no legal authority, however, for the proposition that privity exists in the claim-preclusion context simply through the existence of an agency relationship. On the contrary, "[t]o be in privity, the person must have 'acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession or purchase.'" Bower v. Harrah's Laughlin, Inc., 125 Nev. 470, 215 P.3d 709, 718 (Nev. 2009) (quoting Paradise Palms Cmty. Ass'n v. Paradise Homes, 89 Nev. 27, 505 P.2d 596, 599 (1973)) (emphasis added).  Alternatively, the defendant can establish privity by establishing that a party in the first action "adequately represented" the new defendant's

"interest in the prior lawsuit." Alcantara v. Wal-Mart Stores,
Inc., 130 Nev. 252, 260, 321 P.3d 912, 917 (2014).  This
standard is only met where a

> [a] person is represented by a party who is:
>
> (a) The trustee of an estate or interest of which the
> person is a beneficiary; or
>
> (b) Invested by the person with authority to represent
> him in an action; or
>
> (c) The executor, administrator, guardian,
> conservator, or similar fiduciary manager of an
> interest of which the person is a beneficiary; or
>
> (d) An official or agency invested by law with
> authority to represent the person's interests; or
>
> (e) The representative of a class of persons similarly
> situated, designated as such with the approval of the
> court, of which the person is a member.

Id.

The accountant-client-agency relationship asserted by
Defendants plainly does not meet any of these categories.  And
importantly, no facts are plead in the complaint or proffered by
Defendants that LVLP, Mitchell or Liberman were invested by

Defendants or authorized law with the authority to represent their interests in the prior suit. Nor has Defendants presented any evidence or argument that they have "acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession of purchase." Paradise Palms Cmty. Ass'n, 89 Nev. 27, 505 P. 2d at 599.

Defendants next argue that "Plaintiffs had no 'good reason' for failing to bring these claims against Defendants previously." (Mot. Dismiss at 19). The basis of Defendants' argument rests upon the false assertion that Nype "discover[ed]a cause of action against Defendants as early as March 2018,[but simply] chose not to purse claims against Defendants." Id. at 21. Defendants assert that Spitz's testimony at a March 2018 deposition should have put Nype on notice of the present claims, but fail to identify what testimony or facts revealed in that deposition allegedly accomplished this. Id. at 20-21. Defendants next argue that Nype was on notice of the present claims because Nype filed a motion to enforce their subpoena against Defendants (seeking to compel disclosure of native-electronic files and information not produced, but that was believed to have had to existed). Simply put, however, having knowledge sufficient to allege that Defendants had not fully complied with their subpoena-response obligations is not, in any way, the same as having knowledge sufficient to allege the

23

negligent or intentional spoilation of evidence or a conspiracy to hide, alter, fabricate and/or omit the disclosure of financial documents and evidence.

Indeed, contrary to Defendants' assertions, Plaintiffs did not discover a basis to assert the present claims against Defendants until the veritable eve of trial in the prior action, on or about November 19, 2019, when Nype finally located emails among Mitchell and Defendants. (See Muije Declaration, ¶43-46 and Exhibit 10, which was buried in a 1.2 million page document of November 4, 2019) While, candidly, Nype was suspicious of Defendants, it was not until this time that Nype actually received and found evidence of Defendants working in concert with Mitchell to fabricate false fee agreements that were used, in turn, to justify Defendants' deficient subpoena production. (See Muije Declaration, ¶18). At the time Nype had a reasonable basis to assert claims against Defendants, less than 40 days remained before the start of trial, it was years after the deadline to amend pleadings had passed and more than 3 years after the filing of that action. (See Muije Declaration, ¶13, 31-53). This timing demonstrates, a great—let alone good-reason for not seeking to amend Nype's complaint in the prior action to sue Defendants. To bring Defendants into that action would have essentially required Nype to start over from scratch—after years

of expensive, burdensome litigation—with reopened pleadings and an entirely new discovery period for the new defendants.

Indeed, in the vast majority of jurisdictions, a bright-line rule exists "that 'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit." Media Rights Techs., Inc. v. Microsoft Corp., 922 F.3d 1014, 1021 (9th Cir. App. 2019)quoting Howard v. City of Coos Bay, 871 F.3d 1032 (9th Cir. 2017); see also: Loveland Essential Grp., Ltd. Liab. Co. v. Grommon Farms, Inc., 2012 COA 22, ¶ 21, 318 P.3d 6, 12 (adopting the majority rule in Colorado and, after canvassing the state of the law, noting that this rule is applied in courts in the 1st, 2nd, 3rd, 4th, 6th, 7th, 8th, 9th, 10th, 11th, 12th Circuits, the Federal Circuit Court of Appeal, as well as in the states of Alabama, California, Delaware, Idaho, Kentucky, Massachusetts, Michigan, New Hampshire, New Mexico, New York, Oregon, Rhode Island, South Dakota, Utah and Virginia); Morgan v. Covington Twp., 648 F.3d 172, 178 (3d Cir. 2011)("We hold that [claim preclusion] does not bar claims that are predicated on events that postdate the filing of the initial complaint[.]")

While Nevada has neither adopted or rejected the majority rule, it has recognized "an exception [to claim preclusion] for claims acquired after the responsive pleadings." Mendenhall v.

Tassinari, 403 P.3d 364, 371 (Nev. 2017).  Notably, the
Mendenhall case cites, as support for this exception, the
Loveland Essential Grp., Ltd. case cited directly above (which
did adopt the majority rule for Colorado). Whether Nevada would
adopt the majority rule, is irrelevant, however, as
jurisdictions adopting the minority rule still hold that claim
preclusion "will not be applied where it would be fundamentally
unfair to do so."  Altair Corp. v. Grand Premier Trust & Inv.,
318 Ill. App. 3d 57 (2000).  Indeed, courts will not apply claim
preclusion where a full and fair opportunity to litigate was
lacking. See e.g., Yapp v. Excel Corp., 186 F.3d 1222, 1227 fn.4
(10th Cir. App. 1999)("The absence of a full and fair
opportunity to litigate should be treated as an exception to the
application of claim preclusion when the three referenced
requirements are otherwise present."); Kremer v. Chem. Constr.
Corp., 456 U.S. 461, 481 n.22 (1982) (same).

Here, it would be fundamentally unfair to preclude Nype from
bringing the instant claims against Defendants because they
arose long after filing of the prior complaint, on the eve of
trial and at a time when bringing Defendants into that suit
would have required the parties to start a 3-year long lawsuit

over from scratch.   Nype has easily established a good reason

for not previously suing Defendants in the prior action.[5]

## IV. LEGAL ARGUMENT

**The "Entire Controversy Doctrine" does not apply to bar this
litigation because the proceeding in Monmouth County was only an
ancillary proceeding to the Nevada matter, used to obtain
discovery from an out-of-State witness.**

The Defendants argue that the matter must be dismissed

pursuant to the "entire controversy doctrine" under R. 4:30A.

The Defendants state that any claims against the Defendant

should have been filed in the Superior court of New Jersey, Law

Division, Civil Part, in Monmouth County, where an action to

issue and enforce a subpoena pursuant to R. 4:11-4 (b) was

filed.

The Defendant ignores that the Monmouth matter was not the

type of "controversy" or "adversarial action" to which the

entire controversy doctrine applies to. And the doctrine only

applies if a qualifying action is filed in a New Jersey State

---

[5] Defendants' citation and reliance upon Gambocz v. Yelencsics, 468 F.2d 837
(3d Cir. 1972) is entirely incorrect and misplaced for numerous reasons.  As
Defendants' acknowledge, Nevada law controls, not federal law as Gambocz
applied.  Id. at 840, n.4.  Even if federal law did apply, the law in the
Third Circuit is that claim preclusion "does not bar claims that are
predicated on events that postdate the filing of the initial complaint[.]"
Morgan, 648 F.3d at 178.  Unlike Gambocz, the claims against Defendants in
this suit are not the same as the claims Nype brought in the prior action.
And most importantly, Nevada law precludes application of claim preclusion to
bar claims against parties lacking privity with the prior defendants where,
as here, the plaintiffs present "good reason" for not suing the new
defendants in the prior action.

Court. R. 4:30A. The action filed in Monmouth County was solely limited to a subpoena-enforcement action which sought to compel the Defendant's deposition and production of evidence relevant to an action pending in Nevada. The Plaintiff was required to file an action in New Jersey to enforce the subpoena because New Jersey Rule 4:11-4 requires that actions to enforce a domesticated NJ subpoena be brought in New Jersey. The Defendant was not a named party in the Monmouth matter—no one was—but rather a target of the subpoena. As the Monmouth matter did not allege any claims against Defendants nor any other party, but was rather a procedural mechanism used to enforce an out of state subpoena, the "entire controversy doctrine" cannot apply to bar this proceeding. In other words, the Monmouth matter was not a controversy involving any substantive claims or defenses.

Moreover, courts are loathe to apply the entire controversy doctrine when circumstances are not equitable or that application of the doctrine would not serve its underlying purposes. The doctrine "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 114 (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009). "[A] court should not preclude a claim under the entire controversy doctrine if such a remedy would be

unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) citing Dimitrakopoulos, at 114 (quoting Nicastro, 201 N.J. at 125).

The entire controversy doctrine does not apply to this matter because Nype has never filed a qualifying action in New Jersey against the Defendants. The proceeding to enforce the subpoena was not an "action" in the context of a litigation where the Plaintiff was seeking damages or an injunction. It was just a procedural tool invoked to enforce a subpoena. The action was only filed because the Nevada court did not have jurisdiction to subpoena the Defendants to appear for a deposition and to compel production of discovery. Accordingly, the Act does not apply and does not bar any of the presently asserted claims.

### V. Legal Argument

**The Plaintiffs sufficiently plead the elements of a civil conspiracy.**

The Defendants briefly argue that the Plaintiffs fail to state a cause of action for civil conspiracy. Their argument, which is simply a few conclusory sentences, asserts that the Plaintiffs fail to allege facts constituting a civil conspiracy. This argument ignores the Complaint's contents which allege in

extensive detail that Spitz and the principals of LVLP conspired to prepare misleading financials and take other steps to shield and hide assets from Plaintiffs' collection efforts. Defendants' actions to conceal and fabricate evidence prevented the Plaintiffs from recovering on the judgment and have made efforts to collect substantially more burdensome and expensive. The Complaint details and thoroughly describes Spitz's wrongful conduct.

The Plaintiffs have met the requirements created by case law and the Federal Rules of Civil Procedure to effectively plead a civil conspiracy. Fed. R. Civ. Proc. 8 (a) (2) requires the Plaintiff to state a "short and plain statement of the claim showing that the pleader is entitled to relief." In fact, the Plaintiffs allege more facts than necessary to sustain the civil conspiracy cause of action.

> Federal Rule of Civil Procedure 8(a) does not require
> that a complaint contain detailed factual allegations.
> Nevertheless, 'a plaintiff's obligation to provide the
> 'grounds' of his 'entitlement to relief' requires more
> than labels and conclusions, and a formulaic recitation
> of the elements of a cause of action will not do.'

Adie v. Stewart, 2020 U.S. Dist. LEXIS 239506 *3 (D.N.J. 2020) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

A plaintiff can meet his burden to sufficiently plead a cause of action when the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Twombly, 550 U.S. at 556).

To successfully plead a civil conspiracy, the Plaintiff must asserts facts showing:

> (1) [a] combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages. However, a plaintiff need not prove that the unlawful agreement was express or that each participant in the conspiracy knew the exact limits of the illegal plan or the identity of all participants, as long as plaintiff alleges that each participant shared in the general conspiratorial objective. The plaintiff need not provide direct evidence of the agreement between the conspirators; it is enough that it could be circumstantially inferred from the facts that the conspirators had reached an understanding.

Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J. 1999) quoting Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460 (D.N.J. 1998).

In this matter, element one, or a combination of two or more persons is satisfied, as the Plaintiffs identified the conspirators throughout the Complaint as:

Las Vegas Land Partners, its principals David J. Mitchell, and Barnett Liberman, and various associated

31

> entities including Meyer Property, Ltd., Zoe Property,
> LLC., Leah Property, LLC., Wink One, LLC., Live Work,
> LLC., Live Work Manager, LLC., Aquariious Owner, LLC.,
> LVLP Holdings, LLC., Mitchell Holdings, LLC., Liberman
> Holdings, LLC., 305 Las Vegas LLC., Live Works TIC
> Successor, LLC., FC/Live Work Vegas LLC., and Casino
> Coolidge, LLC.

(See Exhibit 11, ¶ 32).

> SPITZ's actions to destroy and conceal various
> financial documents showing the sources, disposition,
> disbursement and transfers of at least $15,000,000 of
> monies between Liberman, Mitchell and related entities
> resulted in NYPE'S inability to locate funds to
> satisfy judgments entered against them

(See Exhibit 11, ¶ 77);

> SPITZ's actions to conspire with and participate in
> Liberman and Mitchell's fraudulent scheme, which were
> both in violation of his ethical duties and against
> the New Jersey proscription against concealing and
> destroying evidence, the Plaintiff sustained damages
> including but not limited to attorney and expert fees,
> costs, expenses, and the inability to find/locate at
> least fifteen million dollars to satisfy the various
> judgments in this matter

(See Exhibit 11, ¶ 78).

Elements two (common agreement or design) and three (the existence of an unlawful purpose to be achieved by unlawful means) are also sufficiently plead in the Complaint. Plaintiffs alleged that the Defendants and co-conspirators agreed to conceal various transactions and assets of the principals and LVLP for the purposes of preventing the Plaintiffs from recovering on their claims and judgment. (See Paragraph 77). The Defendants effectuated their agreement with LVLP and its principals by taking wrongful actions to prepare misleading

financial records and concealing, withholding, altering, fabricating and destroying evidence (Paragraph 78).

The concealed evidenced and unlawful actions included but was not limited to:

(a) Electronic Worksheets, Quick Books files, Word documents, details of notes; (b) Details of notes receivables to related parties and how they were repaid; (c) Depreciation schedules for the period of 2007 to 2012; (d) Cost basis schedules for all parcels covering the period of 2007 to 2012; I Calculation of loan amoritizations for all loans; support for loan balances, including related party loans; (f) support for loan balances, including related party loans; (g) support for all journal entries made by the LVLP parties; (h) Capital Account detail for each LLC member; (i). Details of all sales and documents provided to Mr. Spitz to calculate gain/loss; (j) details of how each disregarded entity is included on the LVLP Holdings, LLC., tax return; (k) Wink One, LLC., FQ Las Vegas, LLC., FC/LW Vegas, LLC., and QH Las Vegas LLC., detailed accountings provided to Mr. Spitz; (l) Working Trial Balances that agree with the tax returns (2006 and 2007); (m) Working trial balances for all years; (n) supporting work papers that the LVLP parties gave SPITZ to prepare tax returns (Paragraph 59).

Finally, the Plaintiffs satisfy the damages prong as they allege that they were unable to recover on multi-million dollar judgments and incurred enormous expense and burden due to the Defendants' actions.

33

## VI. LEGAL ARGUMENT

**The Plaintiffs sufficiently plead a negligence *per se* cause of action based on State regulations and statutes applicable to accountants.**

The Plaintiff also sufficiently pleads a negligence *per se* claim. The elements for a negligence per se action are: (1) the statute or regulation or regulation clearly applies to the conduct of the defendant; (2) the defendant violated the statute or regulation; (3) the violation of the statute proximately caused the Plaintiff's injuries; (4) and the statute's purpose, is, at least in part, to protect the interest of the Plaintiff individually, as opposed to the public. Mest v. Cabot Corp., 449 F. 3d 503, 518 (3d Cir. 2006).

The Plaintiff satisfies the first prong by citing to both the Accountancy Act of 1997 and regulation N.J.A.C. 13:29-3.1. The statute and regulation apply to certified public accountants and what constitutes permissible conduct.

The regulations also require: objectivity, independence and competence. N.J.A.C. 13:29-3.1.

N.J.A.C. 13:29-3.5 also states that:

A licensee or the licensee's firm shall not undertake any engagement for the performance of professional services which the licensee cannot reasonably expect to complete with due professional competence, including compliance, where applicable.

N.J.A.C. 13:29-3.5.

The Accountancy Act, discussed above, and as its title suggests, also applies to accountants. The relevant portion of the statute states that: "The public interest requires that persons preparing financial statements accompanied by reports or professing special competence in accountancy or offering assurance as to the reliability or fairness of presentation." N.J.S.A. 45:2B-43.

The Plaintiff alleges that the Defendant violated the statute and regulations by failing to maintain and preserve various documents as referenced in Paragraphs 107 and 59 in the Complaint, and as quoted above.

The Defendants' actions lacked competency, objectivity and independence. The actions were of the type that the regulation and the statute explicitly forbid. The regulations require a CPA to be independent and not a proverbial shill for his clients, through acts like shielding assets and hiding, altering, fabricating or failing to disclose evidence. The CPA's duties also require that he ensure that the financial documents he creates are accurate and not fraudulent or misleading.

As a direct result of the Defendants' actions, which violate the Act and regulations, Plaintiffs allege that they sustained damages. The Plaintiffs were unable to collect on their judgments and were  forced to incur additional legal fees

and costs due to the Defendants' spoliation of evidence and obfuscation to shield the paper trail of LVLP and the principal's monetary assets (Exhibit 11, ¶29).

Finally, Plaintiffs' complaint satisfies the last prong of alleging that the Act's and regulations' purpose is, at least in part, to protect the interest of the Plaintiffs individually. The Defendants were aware of the pending lawsuit against the alter egos and the judgment and claims against LVLP and its principals. They were also aware, of course, that they had been subpoenaed to produce evidence. The statute and regulations required the Defendant to accurately and objectively create records which would create an accurate representation of fund transfers and financial conditions of various entities which were liable or could be liable in satisfying the Plaintiffs' judgment. The Defendant's failure to do so resulted in damages (See Exhibit 11, ¶101-108).

**Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss the Complaint must be denied.

Respectfully submitted,

_____
Robert J. De Groot, Esq.
Oleg Nekritin, Esq.