**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RUSSEL L. NYPE *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>SAM K. SPITZ, CPA *et al.*,<br><br>        Defendants. | Civil Action No. 20-13680 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Sam K. Spitz, CPA ("Spitz") and SKE Group, LLC's ("SKE," and together with Spitz, "Defendants") Motion to Dismiss Plaintiffs Russel L. Nype ("Nype") and Revenue Plus, LLC's ("Revenue Plus," and together with Nype, "Plaintiffs") Complaint. (ECF No. 10.) Plaintiffs opposed (ECF No. 14), and Defendants replied (ECF No. 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants the Motion.

## I.    **BACKGROUND**

    Nype is the managing member of Revenue Plus, a real estate investment business. (Complaint ¶ 3, ECF No. 1.) Spitz is a Certified Public Accountant and principal of SKE. (*Id.* ¶¶ 4-6.) In 2005, Nype helped non-parties David Mitchell ("Mitchell"), Barnett Liberman ("Liberman") and Las Vegas Land Partners, LLC ("LVLP") find an investor to assist in the development of properties in downtown Las Vegas. (*Id.* ¶ 10-12.) Nype ultimately secured $101

million in financing for the project. (*Id.* ¶ 20.) Despite his success in securing investors, Nype alleges that Mitchell, Liberman, and LVLP refused to pay him for his services. (*Id.* ¶ 25.) Seeking to preempt Nype, in 2007, LVLP and related entities sued Nype for declaratory judgment (the "First Action") that sought to relieve them of any obligations to compensate Nype for his services. (*Id.* ¶ 26.) Nype responded by filing an answer and counterclaims. (*Id.* ¶ 27.) After extensive litigation in the First Action, the court awarded Nype $2,608,797.50 in damages in 2015. (*Id.* ¶¶ 28-29.)

In 2016, Nype filed a second action in Nevada state court (the "Second Action") against Mitchell, Liberman, LVLP, and related entities to collect on the previous judgment. (*See id.* ¶ 32.) Nype and Revenue Plus alleged fraudulent transfer and alter ego liability in the Second Action. (*Id.*) As part of the Second Action, Plaintiffs subpoenaed Spitz and SKE for documents—primarily because Defendants prepared and filed taxes for LVLP and Mitchell. (*Id.* ¶¶ 33-34; Def.'s Moving Br. 1, ECF No. 10-1.) Along with seeking to depose Spitz, the subpoenas requested documents including tax records, billing records, bookkeeping records, receipts of income, money transfers, expense records, ledgers and engagement letters. (Compl. ¶ 35.)

Spitz's deposition occurred on March 5, 2018. (*Id.* ¶ 36.) During the deposition, Spitz asserted that he produced responsive documents and that his engagement letters with clients stated that he would only retain records for three years. (*Id.* ¶¶ 37-39.) Spitz testified that this retention policy was in effect for the last ten years. (*Id.* ¶ 40.) In addition, Spitz produced a few documents in his possession and testified that he would not produce documents in native formats. (*Id.* ¶ 42.)

Unhappy with Spitz's responses to the subpoenas, Plaintiffs filed a motion in New Jersey state court in Monmouth County, to enforce the subpoena, arguing that Spitz and SKE did not fully comply with the subpoena. (*Id.* ¶ 43.) That court agreed and ordered Spitz and SKE to produce electronic versions of all documents requested in the subpoenas and also ordered searches of

Spitz's and SKE's business servers. (*Id.* ¶¶ 45-46.) Later, the New Jersey state court further ordered that Defendants provide a copy of SKE's server to Plaintiffs with a list of search terms. (*Id.* ¶¶ 56-57.) Ultimately, the state court dismissed for lack of prosecution. (Defs.' Moving Br. Ex. I, ECF No. 10-4.) Plaintiff then filed this Complaint against Defendants, alleging spoliation, conspiracy, negligence, and negligence per se. (*See generally* Compl.) The instant Motion followed.

## II.   **LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "[c]onstrue the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me[.]" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

III.     **DISCUSSION**

Defendants contend that dismissal is warranted on several grounds. First, Defendants argue that Plaintiffs' negligence and spoliation claims must be dismissed under the New Jersey Accountant Liability Act (the "Act"). (Defs.' Moving Br. 7.) Defendants argue that the Act precludes liability for damages against an accountant defendant unless, (1) the claimant is the accountant's client, or (2) the claimant is in privity with the accountant. (*See id.*) Second, Defendants argue that the spoliation claim should be dismissed because New Jersey does not recognize it as an independent cause of action. (*Id.* at 15.) Third, Defendants contend that Nevad's nonmutual claim preclusion doctrine provides for dismissal of these claims, which should have been brought in the Second Action in Nevada. (*Id.* at 17.) Fourth, Defendants argue that New Jersey's entire controversy doctrine precludes these claims. (*Id.* at 25.) Finally, Defendants argue that the conspiracy and negligence claims must be dismissed for failure to state a claim. (*Id.* at 29-31.)

Plaintiffs dispute these grounds. First, Plaintiffs retort that the Act permits suit against an accountant defendant because it can be inferred that Defendants knew that Plaintiffs would rely on his services in the ongoing litigation. (Pls.' Opp'n Br. at 14-16.) Second, Plaintiffs argue that New Jersey recognizes spoliation as an independent cause of action. (*Id.* at 7.) Third, Plaintiffs counter that Defendants failed to establish that this action is barred under the doctrine of claim preclusion. (*Id.* at 18.) Fourth, Plaintiffs counter that the entire controversy doctrine does not apply to bar this litigation because the state-court action in New Jersey was only ancillary to the Second Action. (*Id.* at 27.) Finally, Plaintiffs retort that they have sufficiently pled their conspiracy and negligence claims. (*Id.* at 29-36.)

### A. Neither Claim Preclusion Nor New Jersey's Entire Controversy Doctrine Apply.

Addressing Defendants' unsuccessful arguments first, the Court first considers whether Plaintiffs' claims should be dismissed under claim preclusion or the entire controversy doctrine. Neither doctrine applies.

First, the Court rejects Defendants' argument that under Nevada law, these claims are precluded.[1] Nevada courts apply the following three prong test to evaluate non-mutual claim preclusion: (1) the final judgment is valid, (2) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first action, and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a "good reason" for not having done so. *See Weddell v. Sharp*, 350 P.3d 80, 85 (Nev. 2015) (citing *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008)). The Nevada test "maintains the well-established principle that claim preclusion applies to all grounds of recovery that were or could have been brought in the first case." *Five Star*, 194 P.3d at 713. Here, Plaintiffs' claims were not brought or litigated in the previous action nor were Plaintiffs required to do so. While Plaintiffs previously alleged fraudulent transfer claims against parties that are not present in this action, Plaintiffs now bring negligence, spoliation, and conspiracy claims against those parties' accountants arising out of claims which accrued during the Second Action. In addition, Plaintiffs adequately allege that these claims were not discovered until many years into the Nevada litigation. *Weddell*, 350 P.3d at 85 (noting that "good reason" would exist if the party actually had "the necessary facts to bring suit against respondents[.]").

---

[1] "The law of the state of the issuing court . . . determines the preclusive effects of a judgment." *Freedman v. Redstone*, 753 F.3d 416, 425 n.5 (3d Cir. 2014) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999)).

Likewise, the Court also finds the entire controversy doctrine inapposite. That doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). Specifically, the doctrine requires "a party to bring in one action all affirmative claims that it might have against another party." *Opdycke v. Stout*, 233 F. App'x 125, 129 (3d Cir. 2007) (citation omitted).

In determining whether a claim should be barred, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)). Additionally, the entire controversy doctrine applies "only when a prior action based on the same transactional facts has been tried to judgment or settled." *U.S. ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 352 (3d Cir. 2019) (quoting *Arena v. Borough of Jamesburg*, 706 A.2d 790, 792 (N.J. Super. Ct. App. Div. 1998)). The entire controversy doctrine is "constrained by principles of equity" and does not bar claims "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." *Id.* (citation omitted). Thus, the doctrine's "application is flexible, with a case-by-case appreciation for fairness to the parties." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008).

Here, the Court finds that the claims do not arise out of the same set of facts or transactions as the Second Action. There, the underlying claims arise out of the judgment awarded to Plaintiffs and the non-parties' subsequent acts to shield the judgment from Plaintiffs. The claims before the Court, however, arise out of Defendants' alleged conduct during the course of that litigation, which Defendants were not parties to. The Court, therefore, declines to dismiss the claims under either claim preclusion or the entire controversy doctrine.

**B.     The Act Bars Plaintiffs' Negligence Claims.**

Defendants argue that Plaintiffs' negligence claims are barred by the Act. (Defs.' Moving Br. 8.)[2] Plaintiffs allege that Defendants had a duty to Plaintiffs to maintain accurate records related to the accounting services provided to the judgment debtors and would have knowledge that Plaintiffs would depend on the accounting services they performed for the judgment debtors. (*See* Pls.' Opp'n Br. 15-17.) Plaintiffs argue that Defendants breached said duties and proximately caused Plaintiffs to sustain damages. (*See id.*) The Court addresses the arguments below.

The Act states in relevant part:

b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:

(1) The claimant against the accountant was the accountant's client; or

(2) The accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, *who was specifically identified to the accountant in connection with a specified transaction made by the claimant*;

> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

N.J.S.A. 2A:53A-25(b) (emphasis added).

---

[2] Defendants also broadly assert that "claims of spoliation are considered under established negligence principles." (Defs.' Moving Br. 8.) This assertion ignores that Plaintiffs also allege intentional spoliation claims, which, in New Jersey, are considered under the elements of fraudulent concealment. *Rosenblit*, 766 A.2d at 757.

The Act limits an accountant's liability to non-clients. *Pasqua v. Cnty. of Hunterdon*, No. 14-4203, 2016 WL 4253958, at *17 (D.N.J. Aug. 11, 2016), *aff'd*, 721 F. App'x 215 (3d Cir. 2018). Negligent performance of accounting services does not give rise to liability to non-clients. *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 387 N.J. Super. 469, 479 (N.J. App. Div. 2006). In fact, the New Jersey Supreme Court has interpreted the statute to require that the accountant agreed "to the planned use of his work product" by a non-client. *Cast Art Indus., LLC v. KPMG LLP*, 209 N.J. 208, 226 (2012). Specifically, "[t]here can be no liability unless [the claimant alleges that] the accountant used words or conduct directly expressed to the claimant, which establish the accountant's understanding of the claimant's intended reliance on his work." *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 825 A.2d 585, 589 (N.J. Super. Ct. App. Div. 2003) (internal quotation marks omitted).

The Court finds that the Act bars Plaintiffs' negligence claim. First, while the Court notes that most of the rather sparse case law is focused on auditory work by accountants, that is not the exclusive focus of the Act. Indeed, the Act defines "[p]rofessional accounting service" broadly to include "the compilation, review, certification, or audit of, or the expression of a professional opinion or other reporting on, a financial statement or other information covering a specified period of time." N.J.S.A. 2A:53A-25(a)(4). Importantly, the Act has also been applied to claims that an accountant negligently completed accounting services other than auditory work. *Fagan v. Fischer*, No. 14-7013, 2016 WL 347318, at *17 (D.N.J. Jan. 28, 2016) (finding that the plaintiffs relied on the defendants to "at the very least . . . provide accurate tax records" and thus the Act barred a negligence claim); *Raia v. Cohnreznick LLP*, No. BER-L-2262-18, 2019 WL 5459848, at *1 (N.J. Super. Ct. Law Div. Sep. 23, 2019) (barring negligence claim where the defendants provided "various accounting services, including the preparation and filing of multiple tax returns").

Second, Plaintiffs argue that the "ongoing litigation and the specter of future lawsuits" creates liability for Defendants that is not barred by the Act. (Pls.' Opp'n Br. 15.) Specifically, Plaintiffs argue that Defendants had "knowledge that the Plaintiffs/judgment creditors would rely on his services." (*Id.* at 15-16.) Once again, this argument fails. In interpreting the Act, courts are clear that "awareness" is not enough. *Pasqua*, 2016 WL 4253958, at *17 ("[M]ere awareness . . . on the part of the accountant to the planned use of his/her work product" is not enough (citing *Cast Art*, 209 N.J. 208 at 227)).

Third, Plaintiffs point to Spitz's actions allegedly fabricating and backdating the engagement agreements as reasons to allow the negligence claims to go forward. (Pls.' Opp'n Br. 16.) While the Court will address claims alleging intentional conduct below, these allegations are not properly set forth under Plaintiffs' negligence claims.

### C.      Plaintiffs' Claim for Intentional Spoliation Fails.

The Court next addresses Plaintiffs' claims for intentional spoliation. Plaintiffs argue that Defendants failed to produce documents in response to a subpoena and "[l]ost, destroyed, or affirmatively concealed documents which would have shown the disposition, disbursement and transfer [documents.]" (Compl. ¶ 85.) Plaintiffs allege that as a result of Defendants' acts, they "are unable to recover on their judgments" in the Nevada state court. (*Id.* ¶ 87.) Defendants counter that because New Jersey does not recognize spoliation as an independent cause of action, the claim should be dismissed. (Defs.' Moving Br. 15.) On reply, Defendants argue that even analyzing Plaintiffs' claim under the fraudulent concealment standard, Plaintiffs do not sufficiently plead a claim. (Defs.' Reply Br. 5.)

Defendants correctly aver that New Jersey does not recognize an independent tort for intentional spoliation. *Rosenblit v. Zimmerman*, 766 A.2d 749, 757 (N.J. 2001). That argument, however, ignores that intentional spoliation is properly recognized under the tort of fraudulent

concealment. *Id.* To properly plead spoliation under fraudulent concealment, a plaintiff must allege:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) That the evidence was material to the litigation; (3) That plaintiff could not reasonably have obtained access to the evidence from another source; (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Id.* at 407. Under Rule 9(b), plaintiffs alleging fraud must meet a heightened pleading standard by "'stat[ing] with particularity the circumstances constituting fraud.'" *See Williams v. BASF Catalysts LLC*, No. 11-1754, 2016 WL 1367375, at *8 (D.N.J. Apr. 5, 2016). Plaintiffs can satisfy this heightened standard by alleging dates, times, places, and other facts with precision. *Park v. M & T Bank Corp.*, No. 09-2921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010). However, "[c]ourts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks and citation omitted).

Keeping the heightened pleading burden in mind, the Court finds that Plaintiffs' spoliation claim fails. First, the Court finds that as to the allegation that Defendants destroyed documents, Plaintiffs offered no facts with any particularity that Defendants engaged in document destruction. Second, the Court finds that as to the allegation that Defendants withheld documents, the Complaint contains no allegations that Plaintiffs could not have acquired the documents from another source nor that they were harmed in the underlying litigation by "having to rely on an evidential record that did not contain the evidence [D]efendant concealed." *Rosenblit*, 766 A.2d at 758. To the contrary, the judge in the Second Action took an adverse inference against defendants in the Second Action because of the withholding of documents. (Ex. E to Mot. to Dismiss, *Nype v. Mitchell*, No. A-16-740689-C, 2020 WL 9848961, at *3 (Nev. Dist. Ct. Jan. 17, 2020)). In

addition, the judge also awarded Plaintiffs special damages for the costs incurred because of the withheld documents. *Id.* at 6. The Court, therefore, finds that the Complaint does not satisfy the third or fifth element to maintain a fraudulent concealment claim.

> **D.    Because there are no surviving underlying claims, the Conspiracy Claim also Fails.**

[T]o succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim." *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-7738, 2014 WL 1577694, at *5 (D.N.J. Apr. 21, 2014) (quoting *Trico Equip., Inc. v. Manor*, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011)). If there is no valid underlying tort, a claim for civil conspiracy must be dismissed. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011) ("Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort, and because all of [p]laintiffs' tort claims fail as a matter of law, [p]laintiffs' civil conspiracy claim must be dismissed.").

As discussed above, Plaintiffs' negligence and spoliation claims have been dismissed. Accordingly, Plaintiffs do not have any underlying tort to rest their civil conspiracy claim on, and it therefore fails.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion to Dismiss without prejudice. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE