## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RUSSELL L. NYPE and REVENUE PLUS, LLC,

       Plaintiffs,

       v.

SPITZ K. SAM and SKE GROUP, LLC,

       Defendants.

Civil Action No. 20-13680 (RK) (TJB)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Defendants Sam K. Spitz ("Spitz")[1] and SKE Group, LLC ("SKE") (together, "Defendants") seeking to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36.) Plaintiffs Russel L. Nype ("Nype") and Revenue Plus, LLC's ("Revenue Plus") (together, "Plaintiffs") filed a brief in opposition, (ECF No. 37), and Defendants filed a reply brief, (ECF No. 38). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

## I.    BACKGROUND

This matter arises from Plaintiffs' yearslong attempts to collect on a Nevada judgment Plaintiffs won against a group of associated non-party entities (the "Judgment Debtors"). Plaintiffs are Nype and his real estate investment firm, Revenue Plus. (First Amended Complaint ("FAC")

---

[1] The case caption refers to the individual Defendant as "Spitz K. Sam." However, the pleadings and parties' filings uniformly refer to "Sam K. Spitz." Therefore, the Court refers to this Defendant as "Spitz" as well.

¶¶ 1–3, ECF No. 35.) In 2005, Nype helped the Judgment Debtors—David Mitchell ("Mitchell"), Barnett Liberman ("Liberman"), and their associated entity Las Vegas Land Partners, LLC ("LVLP")—secure investment partners for the development of the Judgment Debtors' downtown Las Vegas property. (*Id.* ¶¶ 8–12.) Using his "extensive contacts," Nype secured a $101 million investment for the Judgment Debtors' properties. (*Id.* ¶¶ 12, 20.) Despite this service, Nype alleges that the Judgment Debtors refused to pay him for his services. (*Id.* ¶ 25.) Anticipating Nype's suit to recover for his work, in 2007, LVLP and its related entities sued Nype for declaratory judgment that sought to relieve them of any obligations to compensate Nype for his services. (*Id.* ¶ 26.) Nype filed counterclaims, and after extensive litigation, the Nevada court ultimately awarded Nype $2,608,797.50 in damages in 2015—eight years after the litigation was instituted. (*Id.* ¶¶ 27–29.) The judgment was largely affirmed on appeal, except for a $50,000 reduction for expert fees. (*Id.* ¶ 31.)

In 2016, Nype filed a separate alter ego and fraudulent transfer action in Nevada against the Judgment Debtors and related entities, seeking to collect on the previous judgment. (*Id.* ¶ 32.) As part of this second action, Plaintiffs subpoenaed Spitz, the Judgment Debtors' New Jersey accountant, and his accounting firm, SKE, who prepared and filed taxes for LVLP and Mitchell. (*Id.* ¶¶ 4–6, 33–34.) Plaintiffs' subpoena sought a deposition of Spitz as well as financial documents, including tax records, billing records, bookkeeping records, receipts of income, money transfers, expense records, ledgers, and engagement letters. (*Id.* ¶¶ 33, 39–40.)

The Amended Complaint alleges that shortly after receiving the subpoena, Defendants altered their form client engagement letter "by inserting a statement that client source documents and financial records are only retained for a period of three years." (*Id.* ¶¶ 40–43.) Defendants allege that a three-year retention period was not Defendants' true practice. (*Id.* ¶¶ 42, 80–81.) On

February 22, 2018, Spitz sent Mitchell four signature pages for the altered engagement letters with instructions to sign four undated copies, which Mitchell did using different pens and different colored ink. (*Id.* ¶¶ 45–46.) Defendants produced and authenticated to Plaintiffs the altered copies of the engagement letters bearing retroactive dates. (*Id.* ¶ 47.) Spitz's deposition occurred on March 5, 2018. (*Id.* ¶ 48.) Spitz testified that older records (those that pre-dated 2013) were not available, citing Defendants' purported three-year document retention policy as memorialized in the produced engagement letters in support. (*Id.* ¶¶ 49–50.) Spitz testified that this retention policy was in effect for the last ten years, (*id.* ¶ 57), and that Defendants' policy was to have clients execute new engagement letters each year, (*id.* ¶ 58).

Spitz also produced several thousand pages of recent accounting data and heavily redacted client communications that Plaintiffs allege omitted key communications responsive to the subpoena. (*Id.* ¶¶ 49, 52–53.) During his deposition, Spitz asserted that he had produced all responsive documents, (*id.* ¶ 54), and that he would not produce documents in native formats, (*id.* ¶ 59). Believing that Spitz had failed to comply with the subpoenas, Plaintiffs filed a motion to enforce the subpoenas in New Jersey state court. (*Id.* ¶ 60.) That court agreed and ordered Spitz and SKE to produce electronic versions of all documents requested in the subpoenas and also ordered searches of Spitz's and SKE's business servers. (*Id.* ¶¶ 63–64.) Before and after the New Jersey court issued its decision, Spitz produced more financial records responsive to the subpoena. (*Id.* ¶¶ 61–62, 67.) Later, the New Jersey state court further ordered that Defendants provide a copy of SKE's server to Plaintiffs with a list of search terms. (*Id.* ¶¶ 78–79.)

Plaintiffs' initial Complaint in the instant matter, filed on October 1, 2020, brought claims for spoliation, civil conspiracy, and negligence. (ECF No. 1.) On February 3, 2022, Judge Shipp granted Defendants' Motion to Dismiss all claims of the Complaint. (ECF No. 21.) Plaintiffs'

spoliation claim was based on the allegation that Defendants "affirmatively concealed" subpoenaed documents that would have revealed the disposition of the Judgment Debtors' funds. (*Id.* at 9.) Judge Shipp held that New Jersey does not recognize spoliation as an independent cause of action but considered whether Plaintiffs had adequately stated a claim for fraudulent concealment, which is viable under New Jersey law. (*Id.* at 9–10.) Judge Shipp concluded that the Complaint failed to state a claim for fraudulent concealment because "Plaintiffs offered no facts with any particularity that Defendants engaged in document destruction." (*Id.*) Further, the Complaint failed to allege that Plaintiffs could not have acquired the documents from another source or that they were harmed in the underlying litigation, both of which were required to make out fraudulent concealment. (*Id.*) Judge Shipp dismissed the Complaint in its entirety but granted Plaintiffs leave to file an amended pleading. (ECF No. 20.)

Plaintiffs filed their Amended Complaint on December 23, 2022. (ECF No. 35.)[2] The Amended Complaint brings two claims for fraudulent concealment and civil conspiracy.

## II.  **LEGAL STANDARD**

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of

---

[2] In dismissing the Complaint on February 3, 2022, Judge Shipp ordered Plaintiffs to file an amended pleading within thirty days. On May 31, 2022—over two months past the deadline—Plaintiffs sought leave to file an amended complaint, (ECF No. 22), which the Court treated as a motion for an extension of time, (ECF No. 23). After extensive briefing, (ECF Nos. 25, 27, 28, 29, 31, 32), the Honorable Tonianne J. Bongiovanni permitted Plaintiffs to file late, finding that excusable neglect justified the late filing but declining to reach Defendants' arguments that amendment was futile, (ECF No. 33).

the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

For fraud claims, a complaint is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b)'s heightened pleading standard applies to claims for fraudulent concealment. *See Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The complaint must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Rule 9(b)'s heightened pleading standard "ensure[s] that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citations and quotations omitted). While Rule 9(b)'s requirements may be "relaxe[d]" when the plaintiff "demonstrate[s] that specific information is in the exclusive control of the defendant," the plaintiff must nonetheless "allege facts suggesting fraudulent concealment." *Weske*, 934 F. Supp. 2d at 703 (internal citations omitted).

III.    **DISCUSSION**

Defendants contend that the Amended Complaint suffers the same defects Judge Shipp identified in the original Complaint and that Plaintiffs' lawsuit is an attempt to sidestep the normal collection process against the Judgment Debtors. (ECF No. 36-1 at 1, 14.) They argue that Plaintiffs' only support for alleging that Defendants concealed documents is their belief that Defendants did not, in fact, have a three-year document retention policy. (*Id.* at 14.) They point to the lack of "factual allegations detailing exactly what the Defendants allegedly did to destroy documents." (*Id.*) They continue that the Amended Complaint's one-paragraph assertion that the documents could not have been obtained from a different source is conclusory. (*Id.*) Finally, Defendants contend that Plaintiffs have not alleged harm in the Nevada litigation from the missing documents because Plaintiffs have identified other viable avenues to recover from the Judgment Debtors and because they received an adverse inference and special damages in the Nevada lawsuit. (*Id.* at 15.)

Plaintiffs respond that the Amended Complaint's added paragraphs detailing how Spitz sent Mitchell blank engagement letter signature pages, which Mitchell signed and Defendants produced during discovery and subsequently relied on to back up their claims of a three-year retention policy, offer sufficient particularity of Defendants' intention to withhold or destroy documents for the purpose of disrupting the litigation. (ECF No. 37 at 19–20.) The Amended Complaint also asserts that Defendants were the sole source of the financial records, (*id.* at 18–19), and that the allegedly withheld documents would have allowed Plaintiffs to collect on their judgments against the Judgment Debtors and avoided expending resources in pursuit thereof, (*id.* at 20–21). In short, Plaintiffs contend that each of the Complaint's flaws have been cured.

There are five elements to a fraudulent concealment claim under New Jersey law, which Plaintiffs must support with particularized allegations at this stage:

> (1) The defendant had a legal obligation to disclose evidence in connection with an existing or pending litigation;
> (2) the evidence was material to the litigation;
> (3) the plaintiff could not reasonably have obtained access to the evidence from another source;
> (4) the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and
> (5) the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320 (3d Cir. 2014) (citing *Rosenblit v. Zimmerman*, 766 A.2d 749, 757 (N.J. 2001)). Defendants do not argue that either of the first two elements—that Defendants at one point possessed the Judgment Debtors' financial documents, that Defendants would have been obligated to turn the documents over in response to a subpoena, and that the documents were material—are insufficiently alleged here. (ECF No. 36-1 at 14–15.) For purposes of the subject motion, at this preliminary juncture, the Court finds the first two elements have been sufficiently pled.

Before proceeding to the Amended Complaint, the Court briefly considers the proper scope of its review at this juncture. In their Motion to Dismiss, Defendants extensively cite filings and factual findings from the Nevada state court proceedings. (*See generally* ECF Nos. 36-1 and 36-4.) Consideration of these documents at this point is improper except to the extent that specific documents were cited in the Amended Complaint. Although the Amended Complaint certainly references the extensive Nevada litigation that resulted in Plaintiffs suing Defendants in an attempt to enforce those judgments, these references do not make every filing in that litigation into a "document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), such that the Court may rely on here. Nor may this

Court accept the Nevada courts' factual findings at face value. *Cf. M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) (holding that judicial notice of other litigation on a motion to dismiss is appropriate where the court relied on other courts' conclusions for its issue preclusion analysis "[w]ithout considering [their] underlying factual analyses"). "[E]xamin[ing] a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment." *Id.* Neither party requested the Court to consider entering summary judgment here, and the Court declines to do so. *See* Fed. R. Civ. P. 12(d) (the court may convert a motion to dismiss into a motion for judgment on the pleadings if all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion"); Fed. R. Civ. P. 56(f)(3) (the court may enter summary judgment *sua sponte* after giving the parties "notice and a reasonable time to respond" and "identifying for the parties material facts that may not be genuinely in dispute"). The Court's role at this juncture is to review the Amended Complaint to determine whether it has made out a claim for fraudulent concealment, not to consider the possibility that the extensive Nevada litigation may undermine allegations in the Amended Complaint. With that clarification, the Court proceeds to the third, fourth, and fifth elements of fraudulent concealment.

The Court begins with the fourth element: that Defendants "intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation." *BASF Catalysts LLC*, 765 F.3d at 320. While Plaintiffs have not alleged the specific time, place, and manner of the documents' destruction or withholding, the Court finds that they have sufficiently "inject[ed] precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. The Judgment Debtors' specific financial records that Plaintiffs seek from Defendants are clear. (FAC ¶¶ 33, 39–40, 78.) The Amended Complaint alleges that Defendants had access to the records at one point as

part of their work for Judgment Debtors, (*id.* ¶ 77), which Defendants do not contest. In support of their allegation that Defendants concealed or destroyed the records rather than hand them over, the Amended Complaint describes in detail an interaction between Spitz and Mitchell to create fraudulent engagement letters that memorialized the reason why Defendants no longer had the Judgment Debtors' financial records. (*Id.* ¶¶ 40–50.) The Court agrees with Plaintiffs that the circumstances surrounding this alleged interaction—including the assertion that Spitz instructed Mitchell not to date the multiple engagement letters he signed, that Spitz sent the letters to Mitchell shortly after receiving Plaintiffs' document subpoena, that Spitz produced the letters in discovery shortly afterwards, that Spitz then cited the letters during his deposition in support of his claim that Defendants had only a three-year retention policy, and that Defendants do not offer any innocent explanation for this interaction—support the inference that Defendants withheld or destroyed the documents in order to disrupt the litigation. Given these details, Defendants cannot claim that they lacked the "notice of the precise misconduct with which they are charged" that Rule 9(b) is designed to prevent. *Craftmatic Sec. Litig.*, 890 F.2d at 645.

The Court disagrees with Defendants' contention that Plaintiffs must specify "exactly what the Defendants allegedly did to destroy documents." (ECF No. 36-1 at 14.) This overstates Plaintiffs' burden and shows insufficient "sensitiv[ity] to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." *Craftmatic Sec. Litig.*, 890 F.2d at 645 (internal quotation marks and citation omitted). While direct allegations of the time, manner, and place Defendants allegedly destroyed documents would easily clear Rule 9(b)'s hurdle, it is clear why such allegations are impossible here. The nature of Plaintiffs' fraudulent concealment claim—in which Defendants are alleged to have destroyed documents solely within their control—makes it understandable that Plaintiffs cannot allege

precisely how or when the documents were destroyed, while generally setting forth the time parameters for withholding of said subpoenaed financial documents. Rule 9(b) does not require such precision at this stage.

The Amended Complaint adequately pleads the third element, that Plaintiffs "could not reasonably have obtained access to the evidence from another source." *BASF Catalysts LLC*, 765 F.3d at 320. A plaintiff's pleading that "he believes the defendants withheld documents or evidence from him," without also "plead[ing] facts to sufficiently allege that such evidence would have made any difference" in the prior litigation, fails to make out the third element. *Fink v. Bishop*, 641 F. App'x 134, 138 (3d Cir. 2016). However, the Amended Complaint pleads sufficient facts through Plaintiffs' extensive litigation efforts in Nevada and New Jersey state courts to secure the Judgment Debtors financial records prior to bringing a separate fraudulent concealment claim in this Court. As the Amended Complaint succinctly alleges, "[t]he Plaintiffs could not have reasonably obtained access to the accounting data and evidence from other sources, and in fact their efforts to do so have to date proven largely unavailing." (FAC ¶ 103.)

Finally, the Court finds that the Amended Complaint has sufficiently alleged harm to Plaintiffs in the Nevada lawsuits from "having to rely on an evidential record that did not contain the evidence defendant concealed." *BASF Catalysts LLC*, 765 F.3d at 320. The Amended Complaint alleges damages from not having access to the documents, including "attorney and expert fees, costs, expenses and an inability to find and locate funds to satisfy the various judgments they have heretofore against LVLP, its principals, and their affiliated entities." (FAC ¶ 92; *see also id.* ¶¶ 102, 106–07.) As the Third Circuit wrote in *BASF Catalysts LLC*: "Plaintiffs' allegations that they received diminished recovery, that their lawsuits were impaired, and that they expended time and money to attempt to litigate around the spoliated evidence, *whether singly or*

*in combination*, suffice to complete the concealment claim." 765 F.3d at 322 (emphasis added). The Amended Complaint's allegations detailing Plaintiffs' yearslong efforts to recover on the judgment awarded in its Nevada claims, notwithstanding the Nevada courts' own recognition of Plaintiffs' complaints, sufficiently alleges the fifth element.

While rendering no opinion on the likelihood that Plaintiffs will be able to eventually prove out their fraudulent concealment claim, the Court finds that the Amended Complaint's allegations at this stage are sufficient for the case to proceed. Because the Court denies Defendants' motion with respect to Plaintiffs' fraudulent concealment claim, Plaintiffs' civil conspiracy survives as well. Defendants' sole argument against the civil conspiracy claim is that because the fraudulent concealment claim fails, the civil conspiracy must as well. (ECF No. 36-1 at 16.) This is true. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011). However, as Defendants do not offer any independent basis to dismiss the civil conspiracy claim, their motion on the civil conspiracy claim is denied as well.

IV.   **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss for failure to state a claim

is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: January 11, 2024